# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. CR406-247 |
| | ) | |
| RAYMOND SHAWN McCLOUD, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Defendant seeks to suppress the statements that he made to federal agents who interviewed him at a local jail two days after his arrest by Savannah police officers on state criminal charges and one day after he invoked his right to counsel during a state court proceeding. Defendant contends that his statements were involuntary and that his interrogation by federal agents violated his Fifth and Sixth Amendment rights under the United States Constitution. The undisputed facts—developed at an evidentiary hearing and through the affidavit and exhibits tendered with

defendant's supplemental motion to suppress—establish that defendant's statements were made voluntarily and that the agents did not infringe any of defendant's constitutional rights during the jailhouse interview. Accordingly, defendant's motion should be DENIED.

## I.    BACKGROUND

Defendant initially filed a "Motion for Jackson-Denno Hearing" in skeletal form, doc. 10, prompting the Court to set the matter down for a hearing to determine the voluntariness of defendant's statements.[1]  See Jackson v. Denno, 378 U.S. 368 (1964) (addressing the procedures a court must follow when a defendant objects to the introduction of a statement as involuntary); United States v. Mostellar, 165 Fed. Appx. 831 (11th Cir. 2006) (a Jackson-Denno hearing is "'constitutionally mandated for a defendant who timely urges that his confession is inadmissible because not voluntarily given.'") (citation omitted).  See also 18 U.S.C. § 3501.  At that hearing, however, it became apparent

---

[1] The government's response interpreted defendant's motion as contesting only the voluntariness of his statements.  Doc 16 (filed March 13, 2007).  Defendant did not file a reply indicating that he was asserting any additional claim prior to the March 27, 2007 evidentiary hearing.

during defense counsel's cross-examination of the government's witness that the primary focus of defendant's suppression motion rested upon the assertion that defendant's invocation of his right to counsel at the time of his appearance before the state recorders court precluded the agents' subsequent interview of defendant at the Chatham County Jail. The government understandably objected to this expansion of the hearing into evidentiary matters that it was unprepared to meet due to a lack of reasonable notice that defendant was asserting more than a voluntariness claim.[2] The Court then allowed defendant an opportunity

---

[2]It is true that in addition to citing the Supreme Court's decision in <u>Jackson v. Denno</u>, defendant's suppression motion made a single reference to "the Fourth, Fifth, and Sixth Amendments to the United States Constitution." Doc. 10. Merely referencing some provision of the Constitution, however, is not sufficient to alert the government as to the basis for a suppression motion and does not entitle a defendant to an evidentiary hearing. A defendant seeking the suppression of evidence has the initial burden of establishing a basis for his motion. "'A motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented . . . . A court need not act upon general or conclusory assertions . . . .'" <u>United States v. Cooper</u>, 203 F.3d 1279, 1284 (11th Cir. 2000) (quoting <u>United States v. Richardson</u>, 764 F.2d 1514, 1527 (11th Cir. 1985)). Thus, "a trial court may refuse a defendant's request for a suppression hearing and motion to suppress if the defendant fails to allege facts that, if proved, would require the grant of relief." <u>Richardson</u>, 764 F.2d at 1526-27; <u>see United States v. Harris</u>, 914 F.2d 927, 933 (7th Cir. 1990) (a defendant's "unsupported allegation that he did not receive proper <u>Miranda</u> warnings is insufficient to warrant a hearing."). <u>See also</u> LCrR 12.1 (motions which rest upon allegations of fact must cite to the existing record or be supported by an affidavit setting forth the movant's version of the facts). Since defendant did not particularize

to amend his motion to more particularly assert that his statements were secured in violation of the protections afforded by the Fifth and Sixth Amendments. Defendant filed that motion on April 5, 2007, doc. 19, and the government filed its supplemental response on April 12, 2007. Doc. 22. Although the Court anticipated that a further hearing would be required to address the factual matters asserted by defendant in his supplemental motion, the government has adopted defendant's version of the facts, id. at 1, and the parties have jointly tendered a transcript of defendant's initial appearance in state court. Doc. 24. No further evidentiary presentation is required, therefore, although (as discussed below) the submission of the transcript did raise an issue that required further briefing by the parties. Docs. 25, 26.

The record reflects the following uncontested facts. On May 24, 2006, Savannah-Chatham Metropolitan Police Department officers

---

his motion or allege any facts that would merit relief under the cited constitutional amendments, the government reasonably construed defendant's initial motion as asserting only a voluntariness claim.

The government readily conceded that the motion's deficiency was attributable to counsel's unfamiliarity with the niceties of federal criminal practice rather than some effort to waylay or sandbag his opponent, a technique foreign to Mr. Painter's character and conduct as an esteemed leader of the bar. The motion's technical defect was immediately corrected and has resulted in no prejudice to defendant.

arrested defendant after he tried to flee from an automobile which officers had stopped for excessively-tinted windows. During the course of that arrest defendant was bitten in the groin area by a police dog and, as a consequence of his injuries, required medical attention. He was charged with several violations of Georgia law[3] and transported to the Chatham County Detention Center. The following day, defendant appeared in the Recorders Court of Chatham County, where he was advised of his right to remain silent and his "right to be represented by an attorney at all stages of the proceedings" and to have counsel present during any questioning. Doc. 19, Exs. X, Y. Defendant indicated that he intended to retain counsel to represent him on the state charges. Doc. 19, Exs. A, Y; doc. 24. The recorders court denied bond and scheduled the matter for a preliminary hearing.

On the morning of May 26, 2006, the day after defendant's appearance in recorders court, two agents of the Bureau of Alcohol,

---

[3] Defendant was charged with felony obstruction of the police, possession of firearm during the commission of a felony, animal cruelty, simple battery on a police officer, and obstruction by giving false information. Doc. 19, Ex. Y. Later, after it was determined that defendant had a felony record, he was charged with possession of a firearm by a convicted felon as an "add on" charge. Id., at Ex. X.

Tobacco, Firearms, and Explosives (ATF)—informed that the police had determined that defendant had a felony record when he possessed a firearm—interviewed defendant at the Chatham County Detention Center.[4] After being advised of his <u>Miranda</u> rights and informed of the purpose of the interview, defendant executed a waiver of his rights and agreed to submit to questioning. Although he was still recovering from his dog bite injury and was taking some form of medication, defendant appeared to understand his rights and had no trouble communicating with the agents. Defendant proceeded to give a detailed statement during an interview lasting some twenty-five to thirty minutes. Although he initially disclaimed any knowledge of the firearm, he soon admitted that this was untrue and acknowledged that he had discarded the firearm because he knew there was a probation warrant for his arrest. At no time did the agents threaten defendant or promise him any benefits in exchange for his statement.

---

[4]At the time of the interview, the agents were under the mistaken impression that defendant had not been charged by the state with unlawful possession of a firearm as a felon.

## II. VOLUNTARINESS

For a statement by a defendant to be admissible at trial, it must be "the product of an essentially free and unconstrained choice by its maker." Culombe v. Connecticut, 367 U.S. 568, 602 (1961). The statement "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Colorado v. Connelly, 479 U.S. 157, 163 (1986). In determining voluntariness, the Court must assess "the totality of the circumstances—both the characteristics of the accused and the details of the interrogation." Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).

Coercive conduct normally involves an exhaustively long interrogation, the use of physical force, or the making of a promise to induce a confession. Connelly, 479 U.S. at 163 n.1; United States v. Mendoza-Cecelia, 963 F.2d 1467, 1475 (11th Cir. 1992). Ultimately, the Court must determine whether a statement is the "'product of an essentially free and unconstrained choice by its maker' or whether the defendant's 'will has been overborne and his capacity for self-

determination has been critically impaired.'" <u>Devier v. Zant</u>, 3 F.3d 1445, 1455-56 (11th Cir. 1993) (quoting <u>Culombe v. Connecticut</u>, 367 U.S. at 602)). "[M]ental deficiencies of a defendant, by themselves, are not sufficient to render a confession involuntary. To establish that his confession was involuntary, [a defendant] must establish police coercion." <u>Moore v. Dugger</u>, 856 F.2d 129, 132 (11th Cir. 1988).

Although defendant was taking pain medication at the time of his interview, he was alert, coherent, and in full possession of his faculties. Defendant indicated that he understood the advice of rights and was allowed to read the waiver form before signing it. Defendant was never threatened, physically abused, or promised any benefits in exchange for his cooperation.

The entire encounter with the agents lasted no more than thirty minutes. Defendant has offered no evidence that he was coerced or pressured to make a statement. Based on the totality of the circumstances surrounding defendant's interview, the Court finds that his statements were entirely voluntary.

## III. FIFTH AMENDMENT RIGHTS

Defendant contends that when he appeared before the recorders court judge and stated that he intended to retain his own attorney, he effectively invoked both his Sixth Amendment right to counsel as well as his "<u>Miranda</u> right to counsel" under the Fifth Amendment.[5] Doc. 19 at 6. Accordingly (he reasons), the government agents were precluded from interrogating him not only about the pending state charges but also about any other criminal matter unless defendant himself initiated further contact with the investigators. <u>Edwards v. Arizona</u>, 451 U.S. 477, 484-85 (1981) (once a suspect asserts his <u>Miranda</u> right to counsel, he may not be approached for further interrogation "until counsel has been made available to him"). Since it is undisputed that it was the ATF agents, not defendant, who initiated the interview on May 26, 2006 at the Chatham County Detention Center, defendant insists that the waiver of his <u>Miranda</u> rights on that occasion was ineffective and his statement to the agents must be suppressed.

---

[5]Although the Sixth Amendment right to counsel is "offense specific," applying only to the offense for which a defendant has been formally charged, <u>McNeil v. Wisconsin</u>, 501 U.S. 171, 175 (1991), the <u>Miranda</u> right to counsel is "<u>not</u> offense

Defendant's argument is foreclosed by the Supreme Court's opinion in <u>McNeil v. Wisconsin</u>, 501 U.S. 171 (1991) and by later Eleventh Circuit authority applying and extending that decision. <u>McNeil</u> held that an accused's invocation of his Sixth Amendment right to counsel at his initial court appearance on a specific charged offense does not also constitute an invocation of his "<u>Miranda</u> right to counsel" under the Fifth Amendment. <u>Id</u>. at 177-80. Thus, even after the Sixth Amendment right to counsel attaches at the first formal proceeding against an accused, the police may still question the accused about other crimes as to which the Sixth Amendment right has not yet attached.[6]

In so ruling, the Supreme Court carefully distinguished the Sixth and Fifth Amendment rights to counsel, noting that the two amendments have different purposes and protect "quite different interest[s]." <u>Id</u>. at 178. Invoking the "offense specific" Sixth Amendment right to counsel—which protects a formally charged

---

specific," and, once asserted as to one offense, prevents any further police-initiated interrogation as to "<u>any</u> offense." <u>Id</u>. at 177.

[6]The defendant in <u>McNeil</u> was represented by counsel during his initial appearance on an armed robbery charge. Later, police investigating a murder, attempted murder, and armed burglary visited defendant in jail, advised him of his

defendant during "'critical confrontations' with his 'expert adversary'"—does not simultaneously invoke the Miranda-Edwards prophylactic guarantees, id., which are designed to counteract the "inherently compelling pressures of custodial interrogation" by requiring that a defendant in the hands of the police not only be informed of his right to silence and to counsel but that he not be pressured into waiving those rights once asserted. Miranda v. Arizona, 384 U.S. 436, 467 (1966); Edwards, 451 U.S. at 484. "To invoke the Sixth Amendment interest is, as a matter of fact, not to invoke the Miranda-Edwards interest." McNeil, 501 U.S. at 178 (emphasis in original).

The dissent in McNeil predicted that the opinion would have little practical effect, because in future preliminary hearings defendants would specifically invoke not only their Sixth Amendment but also their Fifth Amendment right to counsel, thereby precluding the police from reapproaching the defendant regarding either the charged offense or any other offense. Id. at 184 (Stevens, J., dissenting). The dissent's prediction did not prove to be prescient as to this defendant, for despite

---

Miranda rights (which he waived), and obtained statements implicating defendant in the murder/burglary case.

his suggestion to the contrary, nothing in the record before this Court suggests that defendant specifically invoked his Fifth Amendment right to counsel during his appearance before the Chatham County Recorders Court. See Doc. 19, Ex. Y ("Record of First Appearance", where defendant simply acknowledged that he was advised of the charges "and of his rights as the accused", and indicated that he elected to hire his own attorney).

But even if defendant had endeavored to assert his Fifth Amendment right to counsel during his initial appearance before the recorders court, such an invocation of the Miranda-Edwards protections would not aid the defendant here. As will be discussed below, Miranda rights apply only in the context of custodial interrogation, a circumstance defendant did not encounter during his appearance before the recorders court. Furthermore, as the McNeil majority noted in response to the dissent's prediction,

> We have in fact never held that a person can invoke his Miranda rights anticipatorily, in a context other than "custodial interrogation"— which a preliminary hearing will not always, or even usually, involve . . . . If the Miranda right to counsel can be invoked at a preliminary hearing, it

could be argued, there is no logical reason why it could not be invoked by a letter prior to arrest, or indeed even prior to identification as a suspect. Most rights must be asserted when the government seeks to take the action they protect against. The fact that we have allowed the Miranda right to counsel, once asserted, to be effective with respect to future custodial interrogation does not necessarily mean that we will allow it to be asserted initially outside the context of custodial interrogation, with similar future effect.

Id. at 182 n. 3. This footnote "strongly supports the proposition that, to be effective, a request for Miranda counsel must be made within 'the context of custodial interrogation' and no sooner." Alston v. Redman, 34 F.3d 1237, 1246 (3rd Cir. 1994) (noting that although the McNeil majority's response to the dissent's hypothetical is essentially dicta, such dicta "'cannot be treated lightly by inferior federal courts until disavowed by the Supreme Court'").

The premature invocation of the Miranda right to counsel has also been specifically condemned by the Eleventh Circuit. In United States v. Grimes, 142 F.3d 1342 (11th Cir. 1998), counsel representing a defendant arrested on worthless check charges had his client execute a "claim of rights" form that purported to assert his right to counsel and

right to remain silent pursuant to both the Fifth and Sixth Amendments. Id. at 1345 n.3, 1347 n.9.[7]  Subsequently, officers investigating the bombing of an apartment building had a cooperating witness solicit incriminating statements from defendant.  Grimes sought to suppress those statements on the ground that his execution of the claim of rights form effectively asserted both his Fifth and Sixth Amendment rights, thus precluding the government from questioning him about either the worthless check charge or any other criminal matter.  In rejecting this argument, the Eleventh Circuit adopted the view of several other circuits "that Miranda rights may not be anticipatorily invoked."  Id. at 1348. Instead, "Miranda rights may be invoked only during custodial interrogation or when interrogation is imminent."  Id.  Therefore, the claim of rights form which Grimes executed with respect to the worthless check case was insufficient to invoke his Miranda rights with respect to any later police questioning about the bombing incident.

---

[7]The claim of rights form specifically stated that defendant did not wish to be questioned about either the worthless check charge or "any [other] criminal offenses for which he/she is not charged (but is merely a witness or suspect)".  Id. at 1347 n.9. Copies of the form were placed in defendant's court and jail files and were served on both the state attorney's office and the local sheriff's office.  Id. at 1345, 1347.

Defendant suggests that <u>Grimes</u> is "easily distinguished," pointing out that when defendant McCloud was given "a <u>Miranda</u> warning" by the recorders court he was in custody and "subject to being interrogated by the Court," doc. 19 at 6, and that his interrogation the following day by ATF agents was "imminent." <u>Id</u>. at 7. This argument fundamentally misperceives the nature of "<u>Miranda</u> warnings" and the meaning of "interrogation" as used in <u>Miranda</u> and subsequent Supreme Court decisions. The <u>Miranda</u> court concluded that in the context of "custodial interrogation"—involving the "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely"—certain procedural safeguards (i.e., the classic "<u>Miranda</u> warnings") are necessary to protect a defendant's Fifth Amendment privilege against compelled self-incrimination. 384 U.S. at 444, 467. The Court specifically defined "custodial interrogation" as meaning "questioning initiated by *law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." <u>Id</u>. at 444 (emphasis added). "It is clear therefore that the special

procedural safeguards outlined in <u>Miranda</u> are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation. 'Interrogation,' as conceptualized in the <u>Miranda</u> opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300 (1980); <u>id</u>. at n.4 (noting that "the policies underlying the [Fifth and Sixth Amendments] are quite distinct" and that the term "interrogation" does not necessarily have the same meaning under the two amendments).

When a defendant who is formally charged with a crime first appears before a judicial officer, standard practice requires the judge to inform the defendant, inter alia, of the nature of the charges and of his right to counsel (whether retained or appointed) and his right to remain silent and the consequences of speaking. <u>See</u> Fed. R. Crim. P. 5(d); Ga. Unif. Super. Ct. R. 26.1. Contrary to defendant's suggestion, this judicially intoned advice of rights does not qualify as "<u>Miranda</u> warnings," which apply only in the context of custodial interrogation by the police, where defendant is "cut off from the outside world" and held

"incommunicado . . . in a police-dominated atmosphere". Miranda, 384

U.S. at 445. A courtroom is a very different setting from the isolated and

inherently coercive atmosphere of a police station, where a defendant is

"surrounded by antagonistic forces" and subjected to inquisitorial

methods of interrogation, id. at 461, for when in court a defendant is

before an impartial judicial officer whose function is to ensure the

fairness and justness of the proceedings to all parties. In that formalized

setting, it is the judge, not the police, who runs the show. Further, the

rules require that the defendant be advised of his rights whether he is in

custody or appears voluntarily before the Court, and that advice must be

given whether or not defendant is questioned by the Court (which is

usually not the case). McNeil, 501 U.S. at 182 n.3 (noting that

"preliminary hearings" do not usually involve any form of

"interrogation").[8] Indeed, the advice is required even if defendant has

previously been given Miranda warnings by the arresting officers, has

---

[8]During an initial appearance in court, questions may be put to a defendant concerning his financial circumstances (to determine if he qualifies for appointed counsel) or his living arrangements and ties to the community (to determine his fitness for bond). But it would be most unusual, if not unprecedented, for a judge to ask a defendant questions about the underlying criminal charge or to endeavor to elicit any incriminating statement from him.

previously confessed to the crime, or has already secured counsel. Thus, defendant is mistaken in characterizing the advice of rights during a judicial proceeding as "Miranda warnings." [9]

Additionally, the Court is not persuaded by defendant's contention that his interrogation by ATF agents was "imminent" when he invoked his right to counsel before the recorder's court. The Grimes court borrowed this term from the Seventh Circuit's decision in United States v. LaGrone, 43 F.3d 332, 339 (7th Cir. 1994), which in turn referenced the Third Circuit's use of that term in Alston v. Redman, 34 F.3d at 1245, 1249-50. Those decisions used "imminent" to refer to interrogation that was about to commence, not to interrogation that may or may not occur on some future occasion. The reason for such usage is clear: while both decisions preclude a defendant from *anticipatorily* invoking Miranda rights, they did not mean to imply that an in-custody defendant facing certain and impending interrogation by the arresting

---

[9]Miranda warnings are designed to safeguard the Fifth Amendment but are not themselves rights protected by the Constitution. Connecticut v. Barrett, 479 U.S. 523, 528 (1987); Oregon v. Elstad, 470 U.S. 298, 305 (1985); Alston, 43 F.3d at 336. While a defendant is given similar advice upon his first appearance in court, the

officers must actually wait until questioning begins before asserting his _Miranda_ rights. See _LaGrone_, 43 F.3d at 340 (noting that a defendant facing imminent questioning may invoke his _Miranda_ rights "in response to or just before an interrogation"); _Alston_, 34 F.3d at 1249 (while _Miranda_ rights cannot be anticipatorily invoked, a defendant facing "impending or imminent interrogation by agents need not wait until the onset of questioning to assert his rights"). In borrowing the term "imminent" from the Seventh and Third Circuits, the Eleventh Circuit clearly intended to give that term the same meaning as those Courts, for any other interpretation would conflict with its holding that _Miranda_ rights may not be anticipatorily invoked. _Grimes_, 142 F.3d at 1348. Defendant, therefore, is asking this Court to interpret _Grimes_ in a manner inconsistent with the clear holding of that opinion.

Defendant frames the Fifth Amendment question nicely: "The only question is . . . whether Mr. McCloud invoked his Fifth Amendment right to counsel by advising the Judge of the Recorder's Court of Savannah, the day before he was interrogated, that he intended to retain

---

court's advice of rights is premised upon the rules and historic practice, not by _Miranda_.

counsel." Doc. 19 at 4. As the foregoing discussion of the relevant precedents establishes, the answer to that question is a resounding "No."

## IV. SIXTH AMENDMENT RIGHTS

The Sixth Amendment right to counsel attaches only to the specific offense with which a defendant has been formally charged. Texas v. Cobb, 532 U.S. 162, 167-68 (2001). But while the Sixth Amendment right to counsel is "offense specific" and "attaches only to charged offenses," id. at 167, 172, the Cobb Court could "see no constitutional difference between the meaning of the term 'offense' in the contexts of double jeopardy and of the right to counsel." Id. at 173. Accordingly, the Court concluded that the Sixth Amendment right to counsel extends to uncharged crimes that constitute the "same offense" under the test announced in Blockburger v. United States, 284 U.S. 299 (1932). In other words, if the offense with which a defendant has been formally charged has exactly the same elements as an uncharged offense, then the police are prohibited from initiating interrogation of the defendant as to either offense. See Michigan v. Jackson, 475 U.S. 625, 636 (1986) (once

the Sixth Amendment right to counsel has been invoked, any subsequent waiver of that right during police-initiated interrogation is invalid).

Initially, both the government and defendant believed that when the ATF agents investigating the federal offense of felon in possession of a firearm questioned defendant at the Chatham County Jail, he had not been charged by the state with the offense of felon in possession of a firearm. Doc. 19, at 8; doc. 22, at 5. Instead, both parties assumed that when defendant appeared before the recorders court he exercised his Sixth Amendment right to counsel only as to the following state charges: felony obstruction of the police, possession of a firearm during the commission of a felony, cruelty to animals, simple battery on a police officer, and furnishing false information to an officer. Since none of these offenses involved exactly the same elements as felon in possession of a firearm, defendant conceded that his Sixth Amendment argument appeared to be foreclosed by the Supreme Court's holding in Texas v. Cobb, and he raised the Sixth Amendment claim only to preserve his right to appeal should Cobb be overruled.

The government later secured and submitted a transcript of defendant's May 25, 2006 appearance before the Recorders Court of Chatham County. Doc. 24. That transcript establishes that in addition to the state charges mentioned above, defendant was specifically informed that he had been charged by the state with "possession of [a] firearm by [a] convicted felon." Id. at 3. Thus, the parties' initial Sixth Amendment arguments were premised on a misunderstanding of the facts. Since this revelation, both parties have filed additional briefs addressing whether defendant's Sixth Amendment right to counsel, invoked as to all of the pending state charges (including the felon-in-possession charge), attached to the federal charge of possession of a firearm by a convicted felon. Docs. 25, 26. The government concedes that the state and federal statutes criminalizing the possession of firearms by felons would be considered the same offense under Blockburger's "same elements" test. Compare O.C.G.A. § 16-11-131 with 18 U.S.C. § 922(g). The government argues, however, that under the "dual sovereignty doctrine," the state and federal felon-in-possession charges constitute distinct offenses because they are prosecuted by

separate sovereigns. This is a question that was not presented in <u>Cobb</u>, where the factually related, but elementally distinct, charges were brought by the same sovereign.[10]

Several appellate courts, however, have considered whether the dual sovereignty doctrine, which the Supreme Court announced under its double jeopardy jurisprudence, applies in the Sixth Amendment context. The First, Fourth, and Fifth Circuits have concluded that <u>Cobb</u> incorporated the entire corpus of the Supreme Court's double jeopardy jurisprudence, including both the <u>Blockburger</u> same elements test as well as the dual sovereignty principle, into its Sixth Amendment right to counsel jurisprudence. <u>United States v. Alvarado</u>, 440 F.3d 191, 196-98 (4th Cir. 2006); <u>United States v. Coker</u>, 433 F.3d 39, 43-44 (1st Cir. 2005); <u>United States v. Avants</u>, 278 F.3d 510, 516-17 (5th Cir. 2002). The Second Circuit has reached the opposite conclusion, finding no support in <u>Cobb</u> for applying the dual sovereignty doctrine in the Sixth

---

[10] In <u>Cobb</u>, a defendant who had invoked his right to counsel on a state burglary charge was later interrogated by the police regarding a murder committed during the course of the burglary. 532 U.S. at 165-66. The Court held that the Sixth Amendment right to counsel did not extend to the murder offense even though it was "'factually interwoven with the burglary'" offense with which defendant had been formally charged. <u>Id</u>. at 167. The Court stated that it "meant what it said" in <u>McNeil</u> "that the Sixth Amendment is 'offense specific.'" <u>Id</u>. at 164.

Amendment context.  <u>United States v. Mills</u>, 412 F.3d 325, 330 (2d Cir. 2005).[11]

After carefully considering these appellate court decisions, the Court concurs with the reasoning of <u>Avants</u>, <u>Coker</u>, and <u>Alvarado</u> and concludes that the dual sovereignty doctrine is incorporated into the Supreme Court's Sixth Amendment jurisprudence.  The Second Circuit's decision in <u>Mills</u> does not give sufficient weight to <u>Cobb's</u> holding that there is "no constitutional difference between the meaning of the term 'offense' in the context of double jeopardy and of the right to counsel." 532 U.S. at 173.  Since the dual sovereignty doctrine is a "central feature" of the Supreme Court's double jeopardy jurisprudence, "it cannot help but be a central feature of [the Sixth Amendment's] offense-specificity analysis since the two after <u>Cobb</u> are constitutionally one and the same."  <u>Alvarado</u>, 440 F.3d at 196; <u>Coker</u>, 433 F.3d at 44; <u>Avants</u>, 278 F.3d at 517.  "Any other conclusion would be an affront to both state and federal sovereignty."  <u>Alvarado</u>, 440 F.3d at 197.

---

[11]The issue is currently pending before the Eleventh Circuit in <u>United States v. Earl Burgest</u>, No. 06-11351-DD (filed Dec. 11, 2006), on appeal from the United States District Court for the Southern District of Florida.  Doc. 25 (unnumbered exhibit).

Defendant contends that even if the dual sovereignty doctrine applies in this context, this Court should recognize the "Bartkus exception" to the application of dual sovereignty. See Bartkus v. Illinois, 359 U.S. 121, 123-24 (1959) (dual sovereignty principle may be inapplicable where one sovereign acts as a "tool" of the other or where the second prosecution amounts to a "sham and cover" for the first). Some courts have read Bartkus as establishing a "sham prosecution" exception to the dual sovereignty principle to prevent prosecution by a sovereign that "was so dominated, controlled, or manipulated by the actions of the other that it did not act of its own volition." United States v. Baptista-Rodriguez, 17 F.3d 1354, 1361 (11th Cir. 1994). The Eleventh Circuit has "repeatedly refused to decide whether such an exception actually exists." United States v. 817 N.E. 29th Drive, 175 F.3d 1304, 1311 n. 13 (11th Cir. 1999). But assuming that such an exception to the dual sovereignty principle does exist, defendant has not presented or proffered any facts suggesting that in separately prosecuting defendant as a felon in possession of a firearm, either the federal or state authorities were acting as a mere pawn of the other or

somehow failed to exercise their independent sovereign powers. As the government points out, the state proceeded with its own prosecution of defendant, and secured his conviction on felon-in-possession charges, even in the face of the parallel federal prosecution. Further, in electing to prosecute defendant on the federal firearms charge, the local United States Attorney first had to obtain authorization pursuant to the Department of Justice's Petite policy, under which a federal prosecution may proceed following a state prosecution for the same criminal acts only where "the reasons are compelling" and the appropriate Assistant Attorney General has given his approval. Rinaldi v. United States, 434 U.S. 22, 24 n. 5 (1977); Petite v. United States, 361 U.S. 529, 530 (1960); see United States v. Hyder, 732 F.2d 841, 842 n.2 (11th Cir. 1984).

While defendant requests an evidentiary hearing, he has not asserted any facts that would warrant such a hearing on this issue. At most, defendant alleges that the state and federal officials cooperated with each other and shared information regarding defendant's criminal activities. The conventional practice of federal and state cooperation in investigating and prosecuting crime does not support a claim that either

sovereign acted as a mere "tool" of the other.  <u>Bartkus</u>, 359 U.S. at 123.
A district court may refuse a defendant's request for a suppression
hearing where he fails to allege facts that, if decided in his favor, would
require the grant of relief.  <u>Cooper</u>, 203 F.3d at 1284-85.  As defendant
fails to assert any facts indicating that the so-called <u>Bartkus</u> exception
has any applicability to this case, there is no need for an additional
evidentiary hearing.

Nor does the application of the dual sovereignty doctrine permit
"an end run around a defendant's Sixth Amendment right to counsel."
<u>Coker</u>, 433 F.3d at 45.  "[A] similar argument was raised in <u>Cobb</u> and
rejected by a majority of the Supreme Court."  <u>Id</u>.  As the <u>Cobb</u> majority
noted, even where the Sixth Amendment right to counsel does not
obtain, "a suspect must be apprised of his rights against compulsory self-
incrimination and to consult with an attorney before authorities may
conduct custodial interrogation."  532 U.S. at 171.  The Fifth
Amendment, therefore, continues to play a critical role in protecting a
defendant's right to consult with counsel before talking to the police.
"Even though the Sixth Amendment right to counsel has not attached to

uncharged offenses, defendants retain the ability under *Miranda* to refuse any police questioning . . . ." Id. at 171 n.2.

Offenses with identical elements ordinarily constitute the "same offense" under the Fifth Amendment's Double Jeopardy Clause, which precludes multiple or successive prosecution on separate offenses that involve the exact same elements. Blockburger, 284 U.S. at 304 (two offenses are the "same offense" if neither "requires proof of a fact which the other does not"). However, where "a defendant in a single act violates the peace and dignity of two sovereigns by breaking the laws of each, he has committed two distinct offenses" and may be separately prosecuted and punished by each sovereign without offending double jeopardy protections. Heath v. Alabama, 474 U.S. 82, 88 (1985). Defendant would have this Court find that although a federal charge of felon-in-possession of a firearm is not the "same offense" as a state charge of felon-in-possession for Fifth Amendment double jeopardy purposes, it is the "same offense" in the context of the Sixth Amendment right to counsel. The Supreme Court has affirmatively stated that it sees "no constitutional difference" between the meaning of "offense" under

the Fifth and Sixth Amendments. <u>Cobb</u>, 532 U.S. at 173. This Court believes that the Supreme Court meant what it said in <u>Cobb</u>. For these reasons, the Court finds that the federal agents did not violate defendant's Sixth Amendment right to counsel when they questioned him at the Chatham County Jail regarding the "distinct" federal offense of felon in possession of a firearm.

## V.  CONCLUSION

Defendant's motion to suppress is without merit and should be DENIED.

**SO  REPORTED  AND  RECOMMENDED** this _18TH_ day of May, 2007.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA